ARNSTEIN v. EDWARD B. MARKS MUSIC
CORPORATION.

No. 253.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1936.

Krause, Hirsch & Levin, of New York
City (Sydney Krause and Sidney Gross,
both of New York City, of counsel), for
appellant.

Gladstone, Richter, Cohen & Kirsh, of
New York City (Theodore B. Richter, of
New York City, of counsel), for appellee.

Before L. HAND, SWAN, and
CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is the usual bill in equity upon
the infringement of a musical copyright;
the plaintiff's right is admitted and the
sole issue is as to the infringement. The
plaintiff's case depends upon access and
similarity; the defendant answers by
showing that the common parts of the
two pieces have occurred elsewhere and
by the denials of the persons charged
with the piracy. The issue being one
of fact, the plaintiff starts with the find-
ing against him of a trial judge, who
saw all but one of the witnesses, and
whose decision we should accept unless
it is plainly wrong. Although we once
held otherwise in Hein v. Harris (1910)
183 F. 107, independent reproduction of
a copyrighted musical work is not in-
fringement; nothing short of plagiarism
will serve. Section 4952 of the Revised
Statutes, it is true, gave to "the author
of a work the sole liberty of printing,
reprinting, publishing * * * and vend-
ing the same," and the act of 1909 has
not changed the law [section 1 (a), ti-
tle 17, U.S.Code, 17 U.S.C.A. § 1 (a)],
though it did somewhat enlarge the defini-
tion. Our reasoning in Hein v. Harris,
supra, cannot therefore be confined to
musical copyrights, for the same language
covers all copyrighted productions; it can
be defended only in case copyrights, like
patents, are monopolies of the contents
of the work, as well as of the right to
manifold the work itself. That is con-
trary to the very foundation of copy-
right law, and was plainly an inadvertence
which we now take this occasion to cor-
rect. Baker v. Selden, 101 U.S. 99, 25
L.Ed. 841. Verbally our error arose from
not reading the words, "the same," in
Rev.St. § 4952, as referring back to the
words, "the work." The "sole liberty of
printing, publishing and vending" the
"work" means the liberty to make use
of the corporeal object by means of which
the author has expressed himself; it does
not mean "the sole liberty" to create oth-
er "works," even though they are iden-
tical. Were it not so the man who first
made and copyrighted a photograph un-
der section 5 (j) of title 17, U.S.Code,
17 U.S.C.A. § 5 (j), could prevent every
one else from publishing photographs of
the same object.

The plaintiff Arnstein's story is that
he originally composed a song called "The
Russian Gypsy Valse," which he took to
one Gilbert, then in the defendant's em-
ploy; that after he had played it, Gil-
bert suggested some changes, which he
made, so producing a song, which before
its copyright in May, 1931, he brought
back to Gilbert and left with him. In
September, having had no word about it,
he went again to Gilbert, who returned
the copy. Gilbert could remember no talk
about the first song, but in substance he
confirmed the testimony as to the copy-
righted one. After the copyright Arnstein

had thirty copies made, which he distributed to well-known performers, but the song never achieved any popularity by this or any other means. According to his first testimony, among those to whom he gave copies were Deutsch and Altman, song composers; later he retracted as to Altman, after having identified the wrong man in court, and Deutsch denied that he had ever received a copy. This is the only evidence of access.

The defendant proved the origin of the infringing song in the following way: Altman and Lawrence were very young men, who from time to time had composed the words and music of some popular songs without success; Lawrence was accustomed to write the words and to help fill in the harmony for Altman, who composed the melodies. They testified that Altman composed the chorus of the infringing song early in 1931 to be used in a Russian play. Lawrence wrote some words for it, beginning, "What Can I Do?" which in fact do fit the notes. They produced a scrap of paper, Exhibit I, containing these words in pencil and another, Exhibit H-1, also in pencil, a copy of the bare melody of the chorus. On the other side of Exhibit I are the words of a song, "While Canoeing Along With You," which Lawrence wrote, for which Altman composed the music, and which they together copyrighted on April 30, 1931. It is probable that the song, "What Can I Do?" was in fact written for the music of the chorus; at least it is not likely that it should have been written except for a popular love song, and therefore whatever dates the words probably also dates the music. But the fact goes a very short way to confirm Lawrence and Altman that the words of the two songs were written on opposite sides of the same sheet. Of documentary corroboration there is therefore very little, though Altman's wife confirmed their story in detail.

In the spring of 1932, their testimony proceeds, Altman and Lawrence came to Deutsch with a medley of their songs and he told them that they had nothing of value. They came again, this time bringing him the chorus of the infringing song with its present words. He looked at it and said that it was more like what he dealt in, i. e., gypsy songs, and that he thought it would make a hit. He gave them a notion of how the music should go, "inspired" them as they say, and they went away and composed the verse of the infringing song, which they wrote on the back of Exhibit H-1. Deutsch bore out their story, but it must be confessed that his contribution remains very vague indeed, as well as any reason for the use of his name as a joint composer. The most probable explanation is that Altman and Lawrence thought that to join him would help launch the piece with the public, to whom he was better known than they. Although we should have to hold all four of these witnesses deliberate perjurers, willing to forge documents to back up their testimony, that is sometimes the only possible conclusion when the piracy is close enough. Before considering the likenesses between the two pieces with this in mind, we wish, however, to advert to another consideration which seems to us extremely persuasive. As we have said, Arnstein at the beginning of his testimony tried to fasten possession of a copy of his song upon Altman, and retracted later. Altman might of course have got hold of one of the supposed thirty copies from some one else, but there has been no suggestion of this, and it is not very likely, since the song fell flat. Besides, the plaintiff's theory, as we understand it, is that Altman got access to the song from Deutsch, whose disclaimer that he ever received a copy we are to reject; or, if not, we are to suppose that Deutsch saw Gilbert's copy. On either supposition, we should have to find that Deutsch, seeing possibilities in the song and being willing to pirate it, took it to Lawrence and Altman either to do the whole job, or to tinker over a sketch which he (Deutsch) had already prepared; only so can we suppose that Deutsch would have allowed Altman's name to appear as joint composer. Almost anything is possible; so is such a theory, but it is very unlikely. Altman was an entirely unknown person, a one-finger composer who had no reputation; the most he could do was to contribute the simple themes which by this hypothesis Deutsch intended to lift from the copyrighted song; that is to say, his only part could be just what Deutsch did not need, the melody. Lawrence could apparently write the kind of treacle which passes in a popular love song, but such mawkish verses are reeled off by hundreds of poetasters all over the country. Deutsch needed no help from either of these men, certainly not

from Altman, even supposing that he saw opportunities for successful piracy in the copyrighted song. Really the only tenable theory for the plaintiff is therefore that Altman himself pirated the song and brought it to Deutsch, and that theory depends upon the wholly unproven assumption that Altman got a copy of the song from some undisclosed third person.

On the weight of the testimony the case is therefore very heavily with the defendant. The plaintiff recognizes this handicap, and attempts to meet it by the similarity of the two songs, about the only recourse indeed usually open to a copyright owner. The first phrase of the infringing chorus consists of the same four notes as the first phrase of the copyrighted song; that particular sequence can be found in several earlier musical pieces and its spontaneous reproduction should be no cause for suspicion. The second phrase of the chorus has no resemblance whatever to the next phrase of the song, but if one takes some notes of the treble in the accompaniment, moves them to the melody, raises them an octave, and cuts short the resulting melodic phrase, an identity can be made to appear. When the two songs are played the phrases show no resemblance, at least to the untrained ear. To a mind already set to find piracy, this of course seems proof strong as Holy Writ, but it is really of no significance. A plagiarist might of course work in that way, seizing a sequence from the middle of a phrase in an accompaniment as a happy theme; but Altman was scarcely the man for that; his gifts were very limited, and to attribute to him the ingenuity and penetration so to truncate and modify, and thus really to create a melody out of other elements, is harder than to suppose that the extremely simple theme should have occurred to him out of his own mind. True, it is the themes which catch the popular fancy, but their invention is not where musical genius lies, as is apparent in the work of all the great masters. Success in such music as this is by no means a test of rarity or merit; it is a commonplace that the most experienced are usually unable to tell in advance what will hit the public fancy and what will not. Were it otherwise much waste could be avoided. These songs were both written in the key of B-flat; the seven notes available do not admit of so many agreeable permutations that we need be amazed at the re-appearance of old themes, even though the identity extend through a sequence of twelve notes. The rest of the chorus follows a very simple and well-known pattern, and is derived for the most part from the two phrases we have just discussed, which account for the first four measures. The first sixteen measures, all substantially alike, are followed by eight measures, concededly original, and the chorus concludes with a repetition of the first eight. The verse follows the chorus closely enough not to require any separate discussion; indeed, there are larger differences than between the song and the chorus. Given the spontaneous appearance of the original two phrases of the chorus, such likenesses as there are in the remainder are not surprising.

Decree affirmed, without allowance of an attorney's fee in this court.