## GINGG v. TWENTIETH CENTURY-FOX FILM CORPORATION et al.

### No. 2809-H.

District Court, S. D. California, Central Division.

June 12, 1944.

Zagon, Aaron & Fink, by Ray Sandler, all of Los Angeles, Cal., for complainant.

Alfred Wright and Gordon Hall, Jr., both of Los Angeles, Cal., for defendants, Twentieth Century-Fox Film Corporation, Mack Gordon and Harry Warren.

Paul R. Cote, of Los Angeles, Cal., for Mayfair Music Co. and Decca Records, Inc.

HOLLZER, District Judge.

This is an action for alleged infringement of a copyrighted, unpublished song. Infringement is charged both as to lyrics and with respect to the music.

The evidence establishes without contradiction that plaintiff has composed approximately fifty to seventy-five songs, many of which she submitted to publishers, but none was published. Her musical education consisted of studying singing while a university student and subsequently under an instructor. Later she conducted a class in harmony at Oklahoma University and she has also sung in Glee Clubs. Plaintiff has had no training in musical composition. For some years past she has been earning her livelihood as a clerical worker.

In the summer of 1941, she composed the words and music of the song entitled, "There'll Never Be Another You," alleged to have been infringed by the defendants. She made several copies of this song, including the one filed with the copyright office on September 5, 1941. One copy was forwarded to a music publishing house in New York City. Another was submitted to a publishing concern in the City of Los Angeles known as "Melody Lane," still another copy was sent to an organization called "B. M. I." It is her recollection that she made about five copies of this song in all. She further testified that she played the same sometime in 1941, in the presence of the Oklahoma W. P. A. State Supervisor of Music, and on another occasion played her composition for some friends, and that in addition she sent a recording thereof to a sister and another to a Miss Churchwell. However, her testimony fails to disclose when she submitted any of these copies or recordings.

Plaintiff admitted that prior to the trial she had never met either the defendant Gordon, writer of the lyrics of the alleged infringing song, or the defendant Warren, composer of the music thereof. Likewise, she acknowledged that she never submitted her song to any of the defendants.

The music of plaintiff's composition consists of the melody only. The alleged infringing song is entitled: "There Will Never Be Another You". The music thereof includes both the melody and the accompaniment or harmony.

Defendant Gordon is a nationally known figure in the field of popular song writing. In the course of his testimony he stated that over a period of approximately the past sixteen years he had written the lyrics for many hundreds of songs, also that at least several hundred of these had been published, and that many of these had been among the most popular songs throughout the nation.

He further testified that he did not know plaintiff and that prior to the commencement of this suit he had not heard or read either the music or the words of plaintiff's song. Likewise, he stated he had written the lyrics of the alleged infringing song without assistance from any individual or any other source and after the co-defendant Warren had composed the music for the same. These lyrics, he said, were original with himself and had been written by him about November or December of 1941, while he was employed by the co-defendant, Twentieth Century-Fox Film Corporation, hereinafter referred to as the Film Company.

In addition, he testified that about 1936 he wrote the lyrics for another song en-

titled: "Never In A Million Years." This song was published and copyrighted in 1937, and became featured in a motion picture produced by the Film Company and entitled: "Wake Up and Live". The first two lines of the chorus of the last mentioned song read:

"Never in a million years;
Could there be another you."

Defendant Warren is likewise a nationally known personality in the field of popular music. Among other matters, he testified that he had been engaged in composing music for approximately the past twenty-eight years; that he had composed the music for hundreds of popular songs, also for many stage productions and for at least fifty motion pictures; that at least five hundred of his songs had been published and that many of these had been among the most popular throughout the nation.

He likewise stated that he did not know plaintiff, and that prior to the filing of this litigation he had not heard or read either the music or the words of plaintiff's composition. He further testified that he had composed the music of the alleged infringing song without assistance from anyone else or from any other source, and that he submitted his work prior to the writing of the lyrics for the same by the co-defendant Gordon.

In addition, this witness said that while he could not recall the exact date or period when he composed the music in question, he was certain that this work was performed sometime between September 1, 1941, and May 1, 1942, while he was in the employ of the Film Company. At present, he stated, he was in the employ of Metro Goldwyn Mayer Studios.

This defendant further testified that the rhythmic pattern of one full note followed by two short notes, which appears frequently in the alleged infringing song, has been employed by him in at least fifty other songs. He also asserted that there was a clear difference between the melodic structure of plaintiff's composition and that employed in his song, and, further, that there was no appreciable similarity between the two works from a musical standpoint.

Testifying on behalf of the co-defendants, Mayfair Music Company and Decca Records, Inc., Edwin H. Morris, President of the former, stated that throughout the summer and latter part of the year 1941, he personally examined all songs submitted to his company and selected therefrom those which his company published. He also asserted that his company published the alleged infringing song, and that the first time he heard anything concerning plaintiff's song was somewhere between six months and one year after publishing Gordon and Warren's composition. However, he said that he had never seen her song until this trial, and added that he was unacquainted with her.

The plaintiff and likewise the defense each offered expert testimony. The witness who appeared as plaintiff's expert stated that he was a pianist, composer and teacher of music; that he had been teaching about forty years, including six years at the Northwestern Conservatory of Music in Minneapolis; also that he had served as an advisor to teachers of music, had written articles on music for magazines and conducted a column on the subject in a newspaper. He further acknowledged that, while he either had composed or had assisted in the composing of popular music to the extent of about one hundred pieces, he had had exceedingly limited experience with popular music during the past thirty years.

Plaintiff's expert conceded that the alleged infringing composition when played bears very little, if any, resemblance to plaintiff's song, at least so far as the average person or ordinary listener is concerned. He also acknowledged that in the former there are four measures to each musical phrase, whereas in plaintiff's song the entire chorus and most of the verse consisted of phrases having three measures each. Likewise he admitted that although the key signature at the beginning of plaintiff's song purported to denote that it was written in the key of "F," also that whereas the rules for composing music require that the concluding note shall conform in key to the opening note, nevertheless, in plaintiff's composition the closing note does not conform to the beginning note. At the request of defense counsel, this witness undertook to compose and play the harmony for the concluding phrase of the chorus in plaintiff's work, upon the assumption that the latter had been written in the key of "F," and he thereupon admitted that correct harmonizing could not be accomplished in that key. He further conceded that no difficulty would be experienced if plaintiff's work were treated as being written in

the key of "C." However, he explained that, if he were undertaking to write the harmony for plaintiff's song, he would compose the harmony for the verse in the key of "F," and the harmony for the chorus in the key of "C." In addition, he acknowledged that plaintiff's work might be construed as having been written in any one of three different keys, towit: "B" flat, also "C" and "A" minor. He pointed out that he had made a comparative study of the two songs involved herein, particularly with respect to the music thereof, also that such study had been conducted upon the assumption that plaintiff's song was written in the key of "B" flat, and accordingly he had prepared certain comparative charts showing the melody of these songs in parallel lines, except that plaintiff's composition had been re-written so as to conform to the key in which defendant's song was written, namely, the key of "E" flat. However, it appeared that if in preparing these charts the witness had assumed plaintiff's composition as being originally written in the key of "C," then the transposition thereof to the key of "E" flat would have required different notes from those shown in said charts.

Likewise he stated that the chorus in the alleged infringing work had been composed in conformity with orthodox pattern, namely, that it comprised thirty-two measures, whereas the chorus in plaintiff's song consisted of fifty-two and a half measures and followed no recognized pattern. Furthermore, he asserted that the most striking similarity between the two works from a musical standpoint was to be found in the first phrase or first four measures of the chorus of the two songs, and also that the most characteristic melody of each composition was to be found in such first phrase. However, it should be noted that the four notes comprising the first measure and the first note of the second measure of the chorus in defendant's song constitute the first five notes of the scale. In spite of these differences between the two songs, as heretofore noted, plaintiff's expert claimed that he found many similarities between these two works, more particularly with respect to the repetition of the first phrase of the chorus, also with respect to rhythmic pattern, melodic pattern and cadences, and accordingly because of such similarities it was his opinion that the composer of the alleged infringing work had copied the music of plaintiff's song.

Defendant's expert witness, Arthur Lange, is a composer, conductor and arranger of national repute. He testified that his musical experience extended over a period of about thirty-five years; also that he had composed more than five hundred musical works, which included symphonic poems and other works, many popular songs, nearly all of which had been published. His experience also included arranging dance orchestrations, writing books dealing with the same, and also conducting musical shows, dance bands, motion picture studio orchestras and symphony orchestras. He also stated that at the present time he was a "free lance" composer and conductor, although recently he had composed a ballet for defendant Film Company.

According to his testimony, although the signature on plaintiff's song purported to indicate the same to be written in the key of "B" flat, a correct reading thereof disclosed that it was actually written in the key of "C." He likewise had made a comparative study of the two works involved herein, and asserted that from a musical standpoint there was no appreciable similarity between them.

This witness pointed out in considerable detail important rhythmic and metric differences between the two songs. He also demonstrated that in the chorus of defendant's composition the musical pattern comprises, firstly, a section of eight bars, followed by eight bars which may be described as new material or a development of the preceding theme, next eight bars which may be designated as a restatement of the music found in the first eight bars with a slight alteration at the end thereof, and then the final eight bars which are a virtual repetition of the music in the second eight bars, with the exception of a slight change at the end in order to bring the song to a close. On the other hand, he called attention to the fact that in the chorus of plaintiff's song we first have a section of twelve bars, followed by twelve other bars, the latter containing no new material or any development of the music comprising the first twelve bars, but consisting of a repetition of the identical notes thereof; these, in turn, are followed by what is called a release, comprising a minimum of fourteen bars, and which release may be regarded as containing sixteen bars, provided certain of the notes be treated as up-beats or preludes to the phrases constituting such release; next there are ten bars which constitute a repetition of the

identical notes found in the first ten bars of the chorus, and, finally, we have the two concluding bars of the melody.

According to the testimony of this expert, while it is true that there can be found in defendant's work the mirroring of certain measures of plaintiff's song, these situations are not melodically the same, and, furthermore, they represent note combinations which are quite common. Again, he asserted that the instances wherein there are similarities between the two compositions with respect to cadences, metric sequences and melodic sequences, such resemblances are comparatively few in number, and reflect situations which are very common in the field of popular song writing. In addition, he pointed out at considerable length important differences between the two works, particularly with respect to rhythmic pattern, melodic pattern, stress and cadences. In the opinion of defendant's expert, the music of the alleged infringing song did not constitute a copy of plaintiff's work, either in whole or in part.

In addition to the foregoing evidence, documentary proof was introduced to the effect that prior to 1941 twelve songs bearing the same title as plaintiff's composition had been copyrighted, and also that between November 21, 1941, and June 22, 1942, three additional songs similarly entitled had been copyrighted.

Following the conclusion of the trial, plaintiff's counsel submitted a brief in which the latter's theory of the instant suit was epitomized as follows:

"As has been heretofore indicated, *it is not plaintiff's position that there is sufficient similarity in the melody of the two compositions when segregated from the lyrics upon which to predicate a cause of action for infringement of copyright. The test of whether or not an untrained ear could denote the musical similarity, which is reiterated in many decisions cited by defendants, should not be applied to this case for the reason that the primary infringement is based upon the use and copying of the lyrics.* However, under the decisions cited to the Court in the (pre) trial memorandum, there are numerous similarities in the musical construction of the two compositions which though in and of themselves do not meet with the usual tests of musical infringement nevertheless point unerringly to the fact that there has been some access on the part of the defendants to the plaintiff's composition." (Emphasis added)

In the same brief it is further argued that:

"The evidence uncontrovertably disclosed a great number of similarities in the musical structure of the two compositions which impels the conclusion that there has been a copying of the plaintiff's song—similarities so numerous and so apparent that the possibility of coincidence is completely eliminated. * * * The similarities in the musical construction are the circumstances which proved the copying by making the contention of coincidence a mathematical impossibility. It must be borne in mind in considering the merits of this case that plaintiff's composition was copyrighted in September of 1941 but that defendant's composition was not written until several months later in November or December of 1941."

"It is conceded", acknowledged plaintiff's counsel in the same brief, "that *mere similarity in itself is not sufficient to constitute plagiarism. Some proof of access or copying must be presented.* The general rule, however, as stated in 34 Am.Jur., Literary Property and Copyright, Sec. 115, is that *'infringement may be shown by the existence of numerous similarities in the two works;* and from such similarities an inference of copying will arise'. It is *upon this well recognized fundamental principle of law that the plaintiff's cause of action is based.* It is our opinion that the *numerous similarities in the lyrics of the two songs* in and of themselves are sufficient to prove plaintiff's case, to say nothing of the musical similarities." (Emphasis added)

As an abstract legal proposition, the statement quoted by counsel from 34 Am.Jur. is, of course, sound. Likewise, where the circumstantial evidence relied upon is substantial and convincing, this rule may readily be applied. However, where the claimed similarities in the music of the two works are almost entirely so highly technical in nature that, on the one hand, the average listener is unable to recognize any appreciable similarity between the two compositions and, on the other hand, expert musical composers disagree radically as to whether there is any real resemblance between the two songs, there is little, if any, basis for applying the rule quoted. At the close of plaintiff's case in chief, plaintiff's counsel, during the course of the oral argument presented at that time, asserted: "We have pointed out that it is not the plaintiff's position in this case that there has been an

actionable plagiarism of the musical composition. It is our position, your Honor, that the actionable plagarism or the copying or piracy has been with respect to the lyrics."

Accordingly, we turn to an examination of the alleged similarities in the lyrics of the two works. In plaintiff's composition the verse describes a romantic incident in the following words:

> "I knew when I met you
> Knew when you smiled
> That you were just meant for me
> I can't bear to lose you
> Can't let you go
> You're mine till eternity."

The verse of the defendant's song also pertains to a romantic tale, and is worded thus:

> "This is our last dance together
> Tonight soon will be long ago
> And in our moment of parting
> This is all I want you to know."

A mere reading of the two verses just quoted should suffice to demonstrate that they are so dissimilar as to furnish no basis for claiming that the one is a plagiarism of the other. In defendants' song, the verse describes two lovers parting. The romantic story involved in plaintiff's work is one where the lovers remain together. Neither as to theme, nor in the words chosen to express the same, is there any warrant for holding that the verse of the alleged infringing song bears any substantial likeness to the corresponding portion of plaintiff's work. Indeed, her counsel virtually conceded as much during the aforementioned oral argument. Upon that occasion the latter acknowledged:

> "Now there is in evidence fourteen or fifteen songs entitled: 'There Will Never Be Another You', or at least substantially similar. * * * there is no contention on the part of the plaintiff in this case that there has been any infringement or copying of that particular title, * * *. But let us depart from that title, your Honor, and *let us see just exactly where the comparison begins*. To begin with, it is conceded, I think, your Honor, that *with respect to a popular song of this type the chorus is really the important part or the essence of the song itself*." (Emphasis added)

Let us next compare the lyrics of the respective choruses. The words of plaintiff's chorus read as follows:

> *"There'll be other nights like this*
> Other starlit skies of blue
> Other nights of dance and song
> *But there'll never be another you*
> There'll be others to caress
> Other eyes with love light new
> Other kisses quite divine
> *But there'll never be another you.*
> Now, while I hold you close in my arms
> Could time but cease to be
> Now while we're dancing say you'll be mine
> Through all of the days to be
> There'll be other nights like this
> Other star-lit skies of blue
> Other nights of dance and song
> *But there'll never be another you."*
> (Emphasis added)

In the alleged infringing song the chorus is thus expressed:

> *"There will be many other nights like this*
> And I'll be standing here with someone new
> There will be other songs to sing, another fall, another spring
> *But there will never be another you.*
> There will be other lips that I may kiss
> But they wont thrill me like yours used to do
> Yes, I may dream a million dreams
> But how can they come true, if
> *There will never be another you."*
> (Emphasis added)

Admittedly, the words found in the fourth and also in the last line of defendants' chorus are practically identical with those employed by plaintiff in the fourth, eighth and the last lines of her chorus. Here, though, it should be noted that in each instance the language referred to consists of a mere repetition of the words comprising the title of each song, which plaintiff concedes were not original with herself. Hence, this element of similarity between the two works has no significance. Again, where the title of a song deals with a romatic subject, it would be most unusual not to find the lyrics thereof including such words as "nights," "moons," "lips," "kisses," "caresses" and the like.

On the other hand, it is a fact that the words comprising the opening line of each of the two choruses differ but little from each other. However, save in this one particular, we are unable to follow counsel's contentions respecting the claimed similarities between the lyrics of the two choruses.

Comparing the words of the third line of plaintiff's chorus, which are repeated in the next to the last line thereof, with the words found in the third line of the chorus of the alleged infringing song, plaintiff's counsel insist that there is such a close similarity between them as to demonstrate the latter must have been copied from the former. The line referred to in defendant's composition reads: "There will be other songs to sing." Here, however, it should be noted that the second word in the lines referred to in plaintiff's work is not free from doubt. In their pre-trial memorandum and in their closing brief, plaintiff's counsel have based their argument upon the assumption that these lines read: "Other *nights* of dance and song." (Emphasis added) On the other hand, an examination of the document which plaintiff identified as the original copyrighted work (Plaintiff's Exhibit 1) discloses that the lines mentioned read: "Other *hours* of dance and song." (Emphasis added)

A like contention by plaintiff is based upon a comparison of the fifth, sixth and seventh lines in her chorus with the second and sixth lines of defendant's chorus. The three lines first referred to read:

> "There'll be others to caress;
> Other eyes with love-light new;
> Other kisses quite divine."

In the alleged infringing work the lines in question read:

"And I'll be standing here with someone new,
"There will be other lips that I may kiss."

The same conclusion is advanced based upon a comparison of the hereinafter quoted excerpts found, respectively, in the chorus of plaintiff's song, and in the verse of defendants' composition. In plaintiff's work the portion referred to is as follows:

"Now while I hold you close in my arms could time but cease to be;
"Now while we're dancing, Say you'll be mine!
"Thru all the days to be;"

In defendants' composition, the lines claimed to be pirated read:

"This is our last dance together,
"Tonight will soon be long ago,
"And in our moment of parting,
"This is all I want you to know."

Again, it is asserted that the third line of the verse in defendants' song, reading:

"And in our moment of parting" is a piracy of the fourth line of plaintiff's verse, which reads: "I can't bear to lose you!"

The foregoing comparisons are typical illustrations of what plaintiff's counsel describe as "the numerous similarities in the lyrics of the two songs in and of themselves * * * sufficient to prove plaintiff's case." We see no occasion to set forth any additional examples, for in the light of our analysis and appraisal of the evidence, a comparison of the two songs with respect to those features which copyright protects, such as theme, story, unique arrangement of words and phrases, we are unable to find any similarities between these compositions, save as to the one phrase heretofore noted. The situation here is somewhat analogous to that described by the Court in Frankel v. Irwin, D.C., 34 F.2d 142, at page 144, where it was said:

"Counsel have furnished labored analyses of each play; the work on both sides is excellent, but is to me illustrative of the classic difficulty of not being able to see the forest for the trees. Infringement of a work of imagination is determined by the result of comparative reading on the imagination of the reader, not by a dissection of sentences and incidents, suitable for the study of a digest or text-book, but inherently unnatural for any man who has the kind of brains that make him able to adapt a work of fiction."

Discussing the subject of similarities between two literary works, our Ninth Circuit Court of Appeals in the case of Harold Lloyd Corporation v. Witwer, 65 F.2d 1, at page 4, declared:

"The primary question is whether these similarities resulted from copying the story; if not, the similarities are without legal significance. The secondary question is whether the similarities are themselves so marked as to prove by such circumstantial evidence the fact of copying, in the teeth of a denial thereof by those who produced the play. * * *

"The rule is well stated by Judge Learned Hand in the case of Fisher, Inc., v. Dillingham, D.C., 298 F. 145, 147: 'To sustain it (an infringement suit), however, more must appear than the mere similarity or even identity, of the supposed infringement with the part in question. In this lies one distinction between a patent and a copyright. One may infringe a patent by the innocent reproduction of the machine

patented, but the law imposes no prohibition upon those who, without copying, independently arrive at the precise combination of words or notes which have been copyrighted.'

"Judge Hand quotes with approval from a text-book by Drone on Copyright, page 205, which was also cited with approval by the Circuit Court of Appeals of the Second Circuit in Chautauqua School v. National School, 238 F. 151, 153, as follows: 'Works alike may be original.—It is not essential that any production, to be original or new within the meaning of the law of copyright, shall be different from another. Whether the composition for which copyright is claimed is the same as or different from, or whether it is like or unlike, an existing one, are matters of which the law takes no cognizance, except to determine whether the production is the result of independent labor or of copying. * * * Two or more authors may write on the same subject, treat it similarly, and use the same common materials in like manner or for one purpose. Their productions may contain the same thoughts, sentiments, ideas; they may be identical. Such resemblance or identity is material only as showing whether there has been unlawful copying. In many cases, the natural or necessary resemblance between two productions, which are the result of independent labor, will amount to substantial identity. * * * But, notwithstanding their likeness to one another, any number of productions of the same kind may be original within the meaning of the law; and no conditions as to originality are imposed on the makers, except that each shall be the producer of that for which he claims protections.' "

■ Further along in the same opinion (65 F.2d at page 17), the Ninth Circuit Court of Appeals quoted the following from 13 C.J. Section 278:

"Mere priority in time does not confer a monopoly, there being a sharp distinction in this respect between copyrights and patents. Both works may be entitled to copyright, although identical, if each is an original and independent production. Such similarity or identity is merely evidence of copying—more or less strong according to circumstances and the explanations which may be made of it. It is only where the similarity or identity is due to copying from the copyrighted work that the later work may be deemed an infringement. Note 47. Thus, if a person, without making any use of a prior copyrighted work, by his own independent labor produces something similar, there is no infringement. So one work does not violate the copyright in another simply because there is a similarity between the two, if the similarity results from the fact that both works deal with the same subject, or have made use of common sources." See also, 18 C.J.S., Copyright and Literary Property § 94.

■ Again, 65 F.2d at pages 18 and 19 of the same opinion, the court said:

"The rule for determining copying by comparison is succinctly and accurately stated in Corpus Juris, quoting from White-Smith Music Pub. Co. v. Apollo Co., 209 U.S. [1], 17, 28 S.Ct. 319, 52 L.Ed. 655, 14 Ann.Cas. 628, as follows:

" 'A copy is that which comes so near to the original as to give to every person seeing it the idea created by the original.' 13 C.J. 1113, § 276, note 30. The question really involved in such comparison is to ascertain the effect of the alleged infringing play upon the public, that is, upon the average reasonable man. If an ordinary person who has recently read the story sits through the presentation of the picture, if there had been literary piracy of the story, he should detect that fact without any aid or suggestion or critical analysis by others. The reaction of the public to the matter should be spontaneous and immediate. This view is sustained in part at least by the decision of the Circuit Court of Appeals for the Second Circuit in dealing with a plaster cast figure 'Spark Plug,' as an infringement of a copyrighted cartoon of such a horse (King Features Syndicate v. Fleischer, 299 F. 533, 535), where the court said:

" 'The question presented to us is whether manufacturing and duplicating the horse as a figure doll is a copy of the copyrighted idea of the appellant's. The Copyright Act (Comp.St. § 9517 [17 U.S.C.A. Sec. 1]) provides that any person, having complied with the provisions of the act, shall have exclusive right "to print, reprint, publish, copy, and vend the copyrighted work." A copy is that which *ordinary observation* would cause to be recognized as having been taken from or the reproduction of another. In White-Smith Co. v. Apollo Co., 209 U.S. [1], 17, 28 S.Ct. (319), 323, 52 L. Ed. 655, 14 Ann.Cas. 628, the court said:

" ' "What is meant by a copy? We have already referred to the *common under-*

*standing* of it as a reproduction or duplication of a thing. A definition was given by Bailey, J., in West v. Francis, 5 Barn. & Ald. 743, quoted with approval in Boosey v. Whight, 80 L.T.R. 561. He said: 'A copy is that which comes so near to the original as to give to *every person seeing it* the idea created by the original.'" * *'"

Quoting from Roe-Lawton v. Hal E. Roach Studios, D.C., 18 F.2d 126, 128, the opinion of the Ninth Circuit Court of Appeals concludes with the following language:

"Unless the public is deceived by the pictures, and led to believe that the films are a picturization of plaintiff's literary work (the standard of the ordinary observer being applied) then no infringement is shown."

To the same effect are the decisions rendered in Darrell v. Joe Morris Music Co., 2 Cir., 113 F.2d 80, and Arnstein v. Edward B. Marks Music Corporation, 2 Cir., 82 F.2d 275. Each of these two cases involved an alleged infringement of a copyrighted song. In the former, the Second Circuit Court of Appeals declared:

"The strength of the plaintiff's case lies in the substantial identity of a sequence of eight notes in his song and theirs; and indeed, that hardly does justice to the similarity between the two, because the sequence reappears in each song so frequently as to constitute the greater part of each. This makes the two, when rendered, so much alike to the ear, that the supposed piracy appears almost inevitable. Nevertheless, we are not convinced that the conclusion is inescapable. * * * We have already said in Arnstein v. [Edward B.] Marks Music Corporation, 2 Cir., 82 F.2d 275, that such simple, trite themes as these are likely to recur spontaneously; indeed the defendants have been able to discover substantial equivalents of that at bar in a number of pieces which appeared earlier than the plaintiff's and while this did not impair the copyright, it serves to fortify the judge's conclusion that the similarity did not falsify Silver's denial. It must be remembered that, while there are an enormous number of possible permutations of the musical notes of the scale, only a few are pleasing; and much fewer still suit the infantile demands of the popular ear. Recurrence is not therefore an inevitable badge of plagiarism."

Counsel for plaintiff have quoted extensively from 13 C.J., Copyright & Literary Property, with particular emphasis upon Sec. 320 (b) thereof, which, so far as pertinent, reads:

"There must be a copying or appropriation of a substantial or material part of a copyrighted musical work in order to constitute an infringement of it. Where the theme or melody of two musical works is substantially the same there is an infringement, provided such similarity is due to imitation or copying and not to mere coincidence. Slight or merely colorable differences and variations will not prevent a substantial copy in other respects from being an infringement. Piracy exists where the appropriated music, although adapted to a different purpose from that of the original, may still be recognized by the ear. If the two pieces are so much alike that when played by a competent musician they appear to be the same, the infringement is established, notwithstanding variations." See also, 18 C.J.S., Copyright and Literary Property, § 118.

The record before us is a far cry from that which must be established in order to meet the requirements of the rule last quoted. We have heretofore pointed out that, when played by a competent musician, the two songs involved here admittedly bear no recognizable resemblance to each other; at least as far as the average listener is concerned, except in the one particular, namely: the opening phrase of each chorus. Certain observations made by the Court in Arnstein v. Broadcast Music, D. C., 46 F.Supp. 379, would appear to be quite pertinent. That case was also a suit for alleged infringement of songs. At page 381, of 46 F.Supp., the Court there said:

"There is no claim that the songs as a whole are similar. Measures taken here and there, and some sequences of notes, are claimed to have been pirated by the defendant from the plaintiff's compositions. But I cannot place my decision holding the defendant guilty of infringement upon such a tenuous claim. It has not been shown, even if there may be similarity in some of the measures, that a substantial portion of any of the plaintiff's songs has been appropriated. Infringement, it seems to me, must be founded upon more than the adoption of a few measures here and there. The theme and general melody or composition must be substantially lifted. * * *

Whoever the person, whatever the piece, the appeal is to the ear of the listener; either to the melody, the lilt of the tune, its solemnity, or its rhythm. The great group of music lovers listen not for similarity in a bar or two; and, after all, music is written for that great multitude and not for the few who listen to music either to criticize, or with a critical ear to detect variations from the manuscript, or discords, or some other change which to his or her technical ear may seem a sin. There must be in the last analysis such a substantial appropriation that the general public will detect the same air in the new arrangement. Marks v. Leo Feist, Inc., 2 Cir., 290 F. 959. A mere similarity is not the sole criterion of whether there is infringement. Arnstein v. Edward B. Marks Music Corporation, D.C., 11 F.Supp. 535, affirmed 2 Cir., 82 F.2d 275."

In Marks v. Leo Feist, Inc., 290 F. 959, at page 960, which also was a suit for alleged infringement of a musical copyright, the Second Circuit Court of Appeals said:

"Musical signs available for combinations are about 13 in number. They are tones produced by striking in succession the white and black keys as they are found on the keyboard of the piano. It is called the chromatic scale. In a popular song, the composer must write a composition arranging combinations of these tones limited by the range of the ordinary voice and by the skill of the ordinary player. To be successful, it must be a combination of tones that can be played as well as sung by almost anyone. Necessarily, within these limits, there will be found some similarity of tone succession. Even different results may be obtained by varying the accent and tempo. * * * To constitute an infringement of the appellant's composition, it would be necessary to find a substantial copying of a substantial and material part of it. Eggers v. Sun Sales Corp., 2 Cir., 263 F. 373. The exclusive right granted to the appellant by his copyright to print,

reprint, publish, copy, and vend does not exclude the appellee from the use of 6 similar bars, when used in a composition of 450 bars."

Again, in Newcomb v. Young, D.C., 43 F. Supp. 744, at page 746, which was also an action for alleged infringement of a copyrighted song, the Court used language which is pertinent here. It was there stated:

"The similarity of sentiment, thought and treatment of each of the two songs here in issue is only natural and does not spell copying and/or infringement. Apropos of this, Judge Woolsey, in Lewys v. O'Neill, D.C., 49 F.2d 603, at page 606, quoted Dr. Samuel Johnson (October 2, 1753) on this subject: '* * * A coincidence of sentiment may easily happen without any communication, since there are many occasions in which all reasonable men will nearly think alike. Writers of all ages have had the same sentiments, because they have in all ages had the same objects of speculation; the interests and passions, the virtues and vices of mankind, have been diversified in different times; only by unessential and casual varieties; and we must, therefore, expect in the words of all those who attempt to describe them, such a likeness as we find in the pictures of the same person drawn in different periods of his life.' "

■ Applying to the record before us the principles discussed in the decisions hereinbefore cited, we are convinced that the evidence fails to establish that any of the defendants had access to plaintiff's song, or that any of them copied or appropriated any portion of the music or the lyrics thereof, or that there is any substantial similarity between the music or between the lyrics of the respective compositions. Accordingly, we conclude that defendants are entitled to judgment with costs and attorneys' fees, the amount of the latter to be hereafter fixed.