**GRANITE MUSIC CORPORATION,**
**Plaintiff-Appellant,**

v.

**UNITED ARTISTS CORPORATION et al., Defendants-Appellees.**

No. 74–1541.

United States Court of Appeals,
Ninth Circuit.

March 10, 1976.

Irwin O. Spiegel (argued), Beverly Hills, Cal., for plaintiff-appellant.

John Davies (argued), of Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for defendants-appellees.

## OPINION

Before CHAMBERS, CARTER and TRASK, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

This appeal involves a copyright infringement action. The trial court found that plaintiff, owner of a copyright song entitled "Tiny Bubbles" (hereafter "Bubbles"), failed to show an infringement by the defendants in their composition entitled "Hiding the Wine" (hereafter "Hiding") in the motion picture entitled *The Secret of Santa Vittoria.*

The issues on appeal are: (1) the admission of musical similarities, (2) instructions to the jury with respect to the defendants' burden of proof, (3) comments made by the court to the jury, and (4) whether the defendants had to prove that a composition relied upon was not an infringement. We affirm.

Leon Pober composed "Bubbles" in May 1966 and assigned his rights of title and interest to the composition, including the copyright thereon and the right to copyright same, to plaintiff's predecessor in interest, Criterion Music Company. More than 30 records of the song were released.

In April 1969, defendant Ernest Gold was employed to compose the score for the motion picture entitled *The Secret of Santa Vittoria.* Gold had previously composed about 75 scores, including the score to *Exodus.* To prepare for writing the score to the movie, which is the subject of this dispute, Gold steeped himself in Italian folk music. The movie involved the efforts of Italian villagers to hide the village's wine inventory from the German army.

At the time Gold first saw the picture, the sound track contained a piece of music which had been composed by one Rascel. Gold found this eight-bar phrase too short, so he added some material to "flesh it out". In composing "Hiding" he wrote an alternate strain, which strain is the subject of this litigation.

In his original answer to the complaint Gold asserted, as affirmative defenses, that the copyright in "Bubbles" was invalid because it was not an original composition, and the defense of fair use. At trial, however, these defenses were withdrawn. Therefore, there was no issue with respect to the originality of the music of plaintiff's composition "Bubbles" or fair use.

At the trial, the plaintiff produced evidence of Gold's access to "Bubbles" and evidence of the similarity of the two compositions. A witness for the plaintiff testified that, in his opinion, 16 of 19 consecutive notes in the melodies of the two pieces were the same.

Gold denied having heard "Bubbles" or basing his score on the song. He testified that when he was composing his piece he did not have a mental reference to any other musical composition. He did acknowledge that the first four notes in both works were the same, but contended that there were differences between the two songs—"Bubbles" had a smooth, even rhythm, whereas "Hiding" was a "dotted rhythm", which is martial or angular in style.

Over the plaintiff's objections, Gold produced evidence that the same sequence of four notes found in "Bubbles" and "Hiding" were present in other compositions ("Westminister Chimes", "In The Blue Ridge Mountains of Virginia" and "Pauahi O Ka-

lani"), which pre-dated "Bubbles." The defense contended that the demonstration was not intended to show that "Bubbles" was an unoriginal composition but rather that "Hiding" was an independent, coincidental production and therefore not copied from "Bubbles". The court admitted the evidence, cautioning the jury that "The testimony would be received on the issue of the possibility of a composer independently and accidently [sic] happening upon the same phrase."

Gold testified that there was a logical musical explanation for the presence of the same sequence of four notes in the many different compositions: "It is such a musical commonplace that musical literature is full of this phrase. It's almost impossible to escape it."

### (1) *Admission of Musical Similarities*

The plaintiff claims that it was error to admit testimony on other songs containing the same four-note sequence, because such evidence is only relevant if the validity of the plaintiff's copyright was in issue or if Gold claimed to use the prior works in composing "Hiding".

The defendants concede that neither of the two issues were present in this case, but claim the evidence of other songs was admissible nonetheless because it shows that the four-note sequence is a common event in music, and that it adds weight to Gold's claim that he independently created "Hiding".

■ We recognize that a statutory copyright does not give a monopoly over an idea or a musical phrase, but merely protects against the unlawful reproduction of an original work. A. Weil, Copyright Law 383 (1917). A composer's copyright is an absolute right to prevent others from copying his work. *Fred Fisher, Inc. v. Dillingham,* 298 F. 145, 148 (S.D.N.Y.1924).

This protection is subject to definite limitations. As stated by Learned Hand in *Fisher,* at 147, "[T]he law imposes no prohibition upon those who, without copying, independently arrive at the precise combination of words or notes which have been copyrighted." Stated another way, "If A produces identically the same work as B, by independent thought, in good faith, without hearing, or seeing, B's work, both A and B would be entitled to individual copyrights in their individual works." *Weil* at 384.

■ Thus a copyright differs from a patent. Patents are monopolies of the contents of a work as well as the right to reproduce the work itself—one may therefore infringe a patent by innocent and independent reproduction. To the contrary, an "independent reproduction of a copyrighted musical work is not infringement; nothing short of plagiarism will serve." *Arnstein v. Marks Corp.,* 82 F.2d 275 (2 Cir. 1936).

■ Therefore, a copyright infringement action depends upon whether the defendant copied from the plaintiff, or whether he independently created his composition. Any evidence pertaining to the manner in which the defendant created his composition is logically relevant: his training, the subject matter of the art, his access to other works or to the plaintiff's composition.

■ Evidence of similar musical phrases appearing in prior works is also logically relevant to rebut the inference of copying. Such evidence demonstrates that the musical language was of such ordinary and common occurrence that the probability of independent, coincidental production was great.

■ While this court has not found any cases which have expressly discussed the relevancy or admissibility of prior works in these circumstances, the law is replete with cases which assumed, *sub silentio,* that prior works were relevant. One example is the case of *Stevenson v. Harris,* 238 F. 432 (S.D.N.Y.1917), which involved a plaintiff's novel and a defendant's play. The two works had many common elements. Both stories take place in Europe at the beginning of World War I and involve a female spy, a stolen passport, an American man and woman, an inn, the use of shadows on a screen, and an unexpected marriage.

The court held:

"Of necessity, certain kinds of incidents must be found in many books and plays, and originality, when dealing with incidents familiar in life or fiction, lies in the association and grouping of those incidents in such a manner that the work under consideration presents a new conception of a novel arrangement of events.

"It will never do to hold that, because an incident here or there is used in the later production which was used . . in the former copyrighted book or play, therefore the later production infringes the copyright of the former." *Id., at 436.*

Another example of a court's reliance upon prior works is *Arnstein v. Marks Corp., supra,* a case involving two songs. The first phrases of the two songs were similar. The court reasoned:

"The first phrase of the infringing chorus consists of the same four notes as the first phrase of the copyrighted song; that particular sequence can be found in several earlier musical pieces and its spontaneous reproduction should be no cause for suspicion." *Id.* at 277.

Thus in the cases of *Stevenson* and *Arnstein* prior works which explained the presence of similarities and rebutted an inference of copying, were considered. In *Stevenson* the court referred to *specific* examples of similar characteristics present in prior works.

The evidence in the case at bar was no different. The defendants produced evidence that the sequence of four notes (A, G, F, C) can be found in at least seven musical compositions which pre-date "Bubbles" and "Hiding". One defense witness demonstrated how, by minor changes, he could elicit "Bubbles" using the notes of another song, "Pauahi O Kalani". This latter example was intended to show that "Bubbles" itself was a coincidental production which contained the same four-note "building block".

Plaintiff, the owner of "Bubbles", contends that these demonstrations, in effect, put the originality of "Bubbles" into issue. The plaintiff is, in part, correct. The evidence showed that "Bubbles" was not a 100 percent unique composition because it contained a four-note sequence common in the music field.

The plaintiff ignores the point that should this evidence be excluded, the jury would have a false understanding of the relation of "Bubbles" to the current art of music composition. The jury would believe that the four-note sequence was the appellant's unique creation, that the same sequence appeared in Mr. Gold's composition, and therefore Gold probably copied from "Bubbles".

In fact, "Bubbles" does have a sequence commonly found in other musical pieces. The copyrightability of "Bubbles" is not the four-note sequence, but the fitting together of this sequence with other melodious phrases into a unique composition. The true uniqueness of "Bubbles" was therefore not questioned by Gold—only the non-unique elements were proven. We therefore hold that the evidence of prior works containing the four-note sequence were properly admitted.

### (2) *The Defendants' Burden of Proof*

The plaintiff claims that the court erroneously instructed the jury as to the burden of proof upon the defendants.

█ If a plaintiff offers proof that the defendant had "access" to his work and that the two works are substantially similar, then a presumption of copying by the defendant arises. The court described this presumption to the jurors, then the court stated: "The defendants, under such circumstances, have the burden of explaining such similarities or identities between the two works. *Any evidence* produced by the defendant which explains or accounts to the satisfaction of the jury for such similarity or identity, rebuts such presumption . . ."

Plaintiff asserts it made proper objections to the instruction. We seriously question whether plaintiff preserved his record by specifically objecting to the instruction given and setting forth the terms of what he thought the instruction should have

been. Moreover, Rule 51, F.R.Civ.P. requires that the objections to instructions be made after they are given and before the jury retires. *Great-West Life Assurance v. Levy,* 382 F.2d 357, 359 (10 Cir. 1967). Nor was there any stipulation at the conference on instructions or later that the objections there made would be considered as having been made at the time provided by Rule 51, F.R.Civ.P. *See Las Vegas Merchant Plumbers Ass'n v. United States,* 210 F.2d 732, 744–45 (9 Cir. 1954), *cert. den.,* 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954), a case involving a similar rule, Rule 30, F.R. Crim.P., and providing for the use of such a stipulation.

■ However, we proceed to consider plaintiff's contention in view of what appears to be an erroneous statement of law in *Nimmer on Copyright* (1975) and a faulty interpretation of *Overman v. Loesser,* 205 F.2d 521 (9 Cir. 1953), *cert. den.,* 346 U.S. 910, 74 S.Ct. 241, 98 L.Ed. 407 (1953).

The plaintiff's contention as to the allegedly erroneous instruction is based on *Overman, supra,* 205 F.2d at 523, reading as follows:

"  .   .   [T]he evidence of access by the defendant to plaintiff's ideas coupled with the subsequent release by defendant of a product bearing noteworthy similarity to plaintiff's ideas, should be considered as strong and persuasive evidence of copying *which requires the defendant to counter with strong convincing and persuasive evidence to the contrary to refute the inference of copying.* Mere denial without substantial support would not ordinarily be thought sufficient by the trier of fact." (Emphasis added).

The plaintiff also relies on *Nimmer, supra,* § 139.4, p. 606 reading:

"Moreover, the defendant ordinarily must offer evidence of greater weight than merely the verbal testimony of interested witnesses. In these circumstances *the defendant may be held to a standard proof of strong, convincing and persuasive evidence* beyond merely the preponderance of evidence, although short of the 'rea-sonable doubt' criminal standard." (Emphasis added).

*Nimmer* cites *Overman* as authority for this statement.

The *Overman* case, a copyright decision, injected the law of patents into the case. The court stated at 523:

"In its memorandum opinion which was filed, the court found access and similarity. The principal question before us is whether the court erred in failing to require that the appellee prove prior composition 'beyond a reasonable doubt'.

"Appellant relies principally upon *Hoeltke v. Kemp,* 4 Cir., 1935, 80 F.2d 912 [*cert. den.,* 298 U.S. 673, 56 S.Ct. 938, 80 L.Ed. 1395 (1935)], to support his argument. In that case the court said: 'It is well settled that where an unpatented device, the existence and use of which are proven only by oral testimony, is set up as a complete anticipation of a patent, the proof sustaining it must be clear, satisfactory, and *beyond a reasonable doubt.* [Citing cases.] And we think the same rule should be applied against one who admittedly receives a disclosure from an inventor, proceeds thereafter to manufacture articles of similar character, and, when called to account, makes answer that he was using his own ideas and not the ideas imparted to him.' [Emphasis ours.] 80 F.2d at page 923.

"However, on rehearing, the same court stated its position in different language which we quote and to which we shall later advert: 'One who invites the disclosure of an invention, and thereafter begins to manufacture articles embodying the principle of the disclosure, labors under a heavy burden when he seeks to justify his action on the ground of independent invention, and he ought to offer something of greater weight than the verbal testimony of interested witnesses.' *Hoeltke v. Kemp, supra,* 80 F.2d at page 928.

"The above quotations were recently repeated with approval in *Ackermans v. General Motors Corp.,* 4 Cir., 1953, 202

723 S.Ct. 1139, 97 L.Ed. 1403 (1953)].

F.2d 642, 646 [*cert. den.,* 345 U.S. 996, 73 S.Ct. 1139, 97 L.Ed. 1403 (1953)].

"We believe that the broad statement as to proof 'beyond a reasonable doubt' must be read in connection with the court's statement on rehearing and should be considered modified thereby. We agree with the modification expressed in the opinion on rehearing, i. e., the evidence of access by the defendant to plaintiff's ideas, coupled with the subsequent release by defendant of a product bearing noteworthy similarity to plaintiff's ideas, should be considered as strong and persuasive evidence of copying which requires the defendant to counter with strong convincing and persuasive evidence to the contrary to refute the inference of copying. Mere denial without substantial support would not ordinarily be thought sufficient by the trier of fact."

*Hoeltke v. Kemp* and *Ackermans v. General Motors Corp.,* cited and discussed in *Overman* immediately above, were patent cases. *Hoeltke,* 80 F.2d at p. 923, and *Ackermans,* 202 F.2d at p. 646, both contained the following statement, relying on *The Barbed Wire Patent case:*

". . . It is well settled that where an unpatented device, the existence and use of which are proven only by oral testimony, is set up as a complete anticipation of a patent, the proof sustaining it must be clear, satisfactory, and beyond a reasonable doubt. *The Barbed Wire Patent,* 143 U.S. 275, 284, 12 S.Ct. 443, 36 L.Ed. 154 [1892]; *Adamson v. Gilliland,* 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356. And we think the same rule should be applied against one who admittedly receives a disclosure from an inventor, proceeds thereafter to manufacture articles of similar character, and, when called to account, makes answer that he was using his own ideas and not the ideas imparted to him."

Patent law does not ordinarily control copyright cases. As we show *infra, Overman's* injection of this patent law axiom, as

to defendant's heavy burden of proof, into copyright law has been ignored and disregarded.

The *Overman* court, following the excerpts above quoted stated [205 F.2d at 523–24]:

"The burden of proof, i. e., the risk of non-persuasion, remains on the plaintiff throughout the presentation of the case, unless it is declared to be elsewhere by statute or practice. In a suit for copyright infringement the plaintiff must prove that his copyrighted composition has been copied by the defendant, that is, he has the burden of establishing the requisites of the case. The plaintiff may, however, create an inference of copying by establishing access to the allegedly infringed work by the defendant and similarity or identity between disputed works. But, although there is evidence in the case from which an inference of copying could be drawn, the defendant may rebut it by proof of his prior composition. *Since proof of prior composition requires an affirmative offering of evidence by the defendant, there occurs what may be referred to as a shift in the duty of 'going forward'. As Wigmore expresses it [IX Wigmore 2487, p. 280], when 'the proponent has been able *. * * to adduce evidence which if believed would make it beyond reason to repudiate the proponent's claim * * * unless the opponent now offers evidence against the claim and thus changes the situation, the [trier of facts] should not be allowed to render a verdict against reason,' i. e., against the evidence. And the stronger the prima facie case established by the plaintiff, the correspondingly more persuasive must the evidence be in rebuttal."* (Emphasis added).

We believe the above statement in italics to be the holding of the *Overman* case as to the burden of proof, and the language relied on by the defendants to be only dictum. In *Overman* the plaintiff prevailed and the decision on appeal sustained the finding that the defendant did not copy from plain-

tiff's song. Thus the evidence presented by the defendant was more persuasive and overcame the inference of copying.

The language of the opinion that the burden is on the alleged infringer to answer with "strong, convincing and persuasive evidence" to refute the inference of copying has not worked its way into copyright law. *Overman* has been cited, supposedly for this proposition, only three times.

*Greenbie v. Noble,* 151 F.Supp. 45, at 68 (D.C.N.Y.1957) cites it only for the proposition that access and a strong similarity or identity between two works creates an inference of copying. This is good law.

*Bradbury v. Columbia Broadcasting System,* 287 F.2d 478, at 481–82 (9 Cir. 1961), *appeal dismissed,* 368 U.S. 801, 82 S.Ct. 19, 7 L.Ed.2d 15 (1961), cites *Overman* for the proposition that "strong and persuasive evidence of copying requires the defendant to counter with strong convincing and persuasive evidence to the contrary,"—the holding of *Overman* (see *supra*). This is no more than to say that the defendant must overcome the plaintiff's showing.

*Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738 at 741 (9 Cir. 1971) states that access and obvious similarity between plaintiff's pin and those of defendant's "constitute strong circumstantial evidence of copying. But they are not conclusive . . . ." Citing *Overman* and *Nimmer on Copyright,* §§ 139.4 and 141.2. This is good law.

We hold that the instruction given was not plainly erroneous; that the *Overman* holding is limited as set forth above and no overruling of *Overman* requiring an en banc is involved; and finally, that *Nimmer* is in error in its interpretation of *Overman*.

### (3) *Comments by the Court*

■ The plaintiff contends that the following comments made by the judge to the jury were in error:

"[S]imilarity in the melodic phrases in other works may have a bearing in your judgment on whether the defendant copied the plaintiff's composition. If these other similar phrases, or if the phrases concerned are widely used in other compositions, and were nonetheless independently appropriated by the plaintiff, that might indicate the possibility that others could independently appropriate the same phrases. There is no challenge to the plaintiff's copyright of *Tiny Bubbles.* But you will note that the first phrase of *Tiny Bubbles,* those first four notes appeared in many other musical compositions including the third stanza of the famous *Westminster Chimes.* And of course, all of us at one time or another have heard the *Westminster Chimes.* Nobody accuses the plaintiff, the plaintiff's predecessor, of having intentionally copied the *Westminster Chimes* or *In the Blue Ridge Mountains of Virginia,* the first four notes of which that occurs. So the more other tunes that have that phrase that there are in existence, the greater the possibility that Mr. Pober or the plaintiff [defendants?] may have unconsciously had those phrases come into their minds instead of an actual copying of the plaintiff's copyrighted material." [1]

The plaintiff argues that, since his copyright was not challenged it was error for the court to have suggested that he "appropriated" the compositions. However, the judge did not suggest that the plaintiff had appropriated prior works; he expressly stated that plaintiff's copyright was not being challenged. The judge's comment was an attempt to describe in simple fashion the possibility of the independent creation of similar works.

These remarks were clearly within the fair comment allowed a judge. Also, he warned the jurors to make up their own minds, and he stated that his comments were given only to "illustrate" the issues.

---

1. The court probably meant to say in the last five lines of its comments above, ". . . the greater the possibility that the *defendants* may have unconsciously had the phrases come into their minds instead of an actual copying of the plaintiff's copyrighted material."

*(4) Defendants Do Not Have To Prove The Composition Relied On By Them Was Not An Infringement.*

Gold's piece, "Hiding", was based in part upon Rascel's eight-bar song, so the plaintiff claims that the court should have instructed the jury on whether Rascel's piece was an infringement.

The court's refusal to instruct on this was proper because it was not Rascel's, but Gold's, interlineation or counter-theme which was the claimed infringement. The similarity between the Gold composition and the Rascel composition, if any, was not referred to during the trial.

The judgment is affirmed.