## ARNSTEIN v. BROADCAST MUSIC, Inc., et al.

District Court, S. D. New York.
June 30, 1942.

Ira B. Arnstein, of New York City, in pro per.

Rosenberg, Goldmark & Colin, of New York City (Stuart Sprague and Robert J. Burton, both of New York City, of counsel), for defendant Broadcast Music, Inc.

Julian T. Abeles, of New York City, for Edward B. Marks Music Corporation.

BRIGHT, District Judge.

This is an action brought for the alleged infringement by the defendants of nine songs claimed to have been composed by the plaintiff. The complaint was framed in nine causes of action. The fifth, seventh and eighth causes of action were dismissed upon the trial because plaintiff failed to prove any copyright. Boucicault v. Hart, Fed.Cas.No. 1,692; Cohan v. Richmond, 2 Cir., 86 F.2d 680. The ninth cause of action was dismissed because plaintiff failed to prove that the accused song, "The White Cliffs of Dover" had ever been published, broadcasted, recorded or publicized by the defendants.

The first cause of action is for an infringement of the song "Sadness Overwhelms My Soul", written by the plaintiff, in the admitted publication and broadcasting by the defendant of the song "I Hear a Rhapsody". Plaintiff's song was first copyrighted in February, 1937 under the title "Sunshine on Miami Beach" but with different lyrics. Both title and lyrics were changed to the present song copyrighted August 22, 1940, and a subsequent copyright was obtained on May 5, 1941. The song was never published or recorded. It was submitted to defendant for examination on August 22, 1940. Plaintiff testified that the two songs sound alike in the way he arranges them but not in the way they were arranged by the defendant, and do not sound alike if played from beginning to end. His expert admitted that if the whole songs were played, they would not sound alike, nor if compared measure by measure; that only by dissecting them could you get similarity. It was shown that Fragos composed the music for the accused song in December 1935, and it was played in a band for some time thereafter, but not actually written out until 1937, the manuscript being finally written and completed in 1939. Both the composer of the music and Baker, the composer of the lyrics of the accused song, said that they never had seen plaintiff and had never received anything from him. The defendant's expert testified there was no similarity in the two songs. Defendant sent the manuscript copy of the accused song to the printer on August 6, 1940, the second proof on August 8, 1940, and the final copies of the

song were received on August 16, 1940, the defendant having made a contract with Fragos and Baker, the composers, on July 21, 1940. There is no proof of access on the part of the defendant, or the composers of the accused song, before plaintiff's song was submitted.

The second cause of action is based upon the alleged infringement of plaintiff's song "My Gypsy Love", by the song "Yours", which the defendant admits it had broadcasted and recorded. The plaintiff's song was submitted to defendant on August 22, 1940. It was copyrighted on September 12, 1929, and was submitted to E. B. Marks & Company in 1931 under the name of "Tango", before that concern published the accused song. "Yours", however, was composed by Gonzale Roig, a Cuban, in 1921, or earlier, in which year it was copyrighted under the name of "Quierme Mucho". It was sung by one of the defendant's witnesses in Cuba in 1929 and by her in New York and Europe in 1937. Marks contracted with Roig for the production of the song in this country on March 24, 1931, and the song was copyrighted here on November 30, 1931. Another of the defendant's witnesses testified that she heard the song played and sung in Havana in 1926. There was obviously no access by the composer of the accused song to the music of the plaintiff's song. In fact, the former antedated the latter by nearly eight years. Plaintiff's expert testified that the average person would not notice any similarity between the two pieces but that there are three measures which have great similarity.

The third cause of action is based upon the plaintiff's song "V'Shomru", a Hebrew prayer, impressive in its solemnity and strikingly appropriate for the purpose for which it was written. That song, also, was submitted to defendant on August 22, 1940. It is claimed to be infringed by the song "Perfidia", admittedly broadcasted by the defendant, and which is a Spanish ballad written in typical Spanish time. Plaintiff's song was copyrighted in 1922, and was sung and broadcasted by Cantor Rosenblatt in many parts of this country. "Perfidia" was copyrighted here on March 4, 1939. Both music and lyrics were composed by Alberto Dominguez, a Mexican composer, and were copyrighted in Mexico in 1939. There is no proof of access, and it is shown that the composer of the accused song had lived in Mexico for the last ten or twelve years and is one of the top composers of that country.

Plaintiff testified that if the two songs were played as written, they could not sound alike because one was a sacred number and the other a dance, but if played in the same tempo, they sound much alike. As written, plaintiff's expert said, they do not sound alike, but if both are played adagio they sound more alike. The defendant's expert said there was no similarity. Plaintiff's song, admittedly, has not been marketed since 1931 or 1932.

The fourth cause of action claims an infringement of plaintiff's song "Whisper To Me" by the song "It All Comes Back To Me Now", admittedly published, broadcasted and recorded by the defendant. Plaintiff's song was copyrighted on February 29, 1932, but the song has not been merchandized since 1935, never recorded, nor performed on the radio. It was submitted to the defendant on August 22, 1940. Joan Whitney, the composer of the song, testified that she and one Zaret had composed the music and lyrics prior to its submission to the defendant in the early part of September, 1940; that she had never seen plaintiff nor heard his song before that, and that her song was not based on anything in the public domain that she knew of. The same testimony was given by Zaret, and also by one Kramer, who collaborated with Whitney. Here, again, there is no proof of access, and plaintiff testified that he has not tried to sell his song since two years after it came out.

The sixth and remaining cause of action is based upon the alleged infringement of plaintiff's march "Soldiers of Zion" copyrighted on April 27, 1918, but never delivered to defendant, by the song "Frenesi", admittedly broadcasted and recorded by the defendant. Plaintiff's song is a stirring, militant march and is entitled to much commendation. It has been recorded and was sung by Cantor Rosenblatt, and has been produced in other places for some time after its copyright. The composer of the accused song is the Mexican composer already mentioned, Albert Dominguez, and his song is a tango, entirely different in rhythm and melody from the plaintiff's march. The accused song was written in Mexico; the other in this country, and there is no proof of access. Plaintiff admitted that a layman would not readily recognize any similarity between the two; that it would take an expert to recognize the change to avoid detection. His contention is that the first four measures of his march are repeated in the

chorus of "Frenesi". Defendant's expert said there was no similarity.

I have had the several songs in question played over for me time and again. I am frank to say that I could not detect any similarity in any of the pieces. There is no claim that the songs as a whole are similar. Measures taken here and there, and some sequences of notes, are claimed to have been pirated by the defendant from the plaintiff's compositions. But I cannot place my decision holding the defendant guilty of infringement upon such a tenuous claim. It has not been shown, even if there may be similarity in some of the measures, that a substantial portion of any of the plaintiff's songs has been appropriated. Infringement, it seems to me, must be founded upon more than the adoption of a few measures here and there. The theme and general melody or composition must be substantially lifted.

Music is a universal language. From the compositions of the great masters to the popular swing music of the day, the individual taste can be satisfied. There are just as many degrees of enjoyment in a person as there are moods, and, naturally, they react as the mood calls for. How we react to the rhythm and tempo of a composition depends upon our emotions. There are those who prefer the sublime treatment of Handel's oratorios, or the masterful music of Wagner, or the depth and thrilling beauty of Bach, Beethoven and Brahms and the countless other masters who have contributed to the wealth of the musical world. Then again, there are others who are carried away by the color and romance of the fascinating Strauss waltzes, or the charm and gaiety of Victor Herbert's beloved music, as well as the more modern fine works of Gershwin. And so on down to those who prefer what is known in the vernacular as our present day "hot" music.

Whoever the person, whatever the piece, the appeal is to the ear of the listener; either to the melody, the lilt of the tune, its solemnity, or its rhythm. The great group of music lovers listen not for similarity in a bar or two; and, after all, music is written for that great multitude and not for the few who listen to music either to criticize, or with a critical ear to detect variations from the manuscript, or discords, or some other change which to his or her technical ear may seem a sin. There must be in the last analysis such a substantial appropriation that the general public will detect the same air in the new arrangement. Marks v. Leo Feist, Inc., 2 Cir., 290 F. 959. A mere similarity is not the sole criterion of whether there is infringement. Arnstein v. Edward B. Marks Music Corporation, D.C., 11 F.Supp. 535, affirmed 2 Cir., 82 F.2d 275.

I have concluded that the plaintiff must fail here because of lack of proof both of access and substantial similarity and copying. The thought in my mind is well expressed by District Judge Yankwich, in Carew v. R. K. O. Radio Pictures, 43 F. Supp. 199, 200: "On the question of infringement I think that the plaintiff's case must fail because of the admission of both of her experts that the two melodies, if played on the piano, or the two songs, if sung by any person, would not convey identity to the average listener. The courts have said that, ultimately, it is not the dissection to which a musical composition might be submitted under the microscopic eye of a musician which is the criterion of similarity, but the impression which the pirated song or phrase would carry to the average ear."

The complaint is, therefore, dismissed upon the merits, with costs, and with an allowance to the defendant of $500 as counsel fee. Defendant may propose findings.