**Rebecca REYHER and Ruth Gannett, Plaintiffs,**

v.

**CHILDREN'S TELEVISION WORK-SHOP and Tuesday Publications, Inc., Defendants.**

**No. 72 Civ. 627 JMC.**

United States District Court, S. D. New York.

Jan. 25, 1974.

Stoll & Stoll, New York City, for plaintiffs.

Coudert Brothers, New York City (Eugene L. Girden and Carleton G. Eldridge, Jr., New York City, of counsel), for defendants.

## MEMORANDUM

CANNELLA, District Judge.

Motion by the defendants for summary judgment dismissing the complaint as a matter of law, made pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, is denied.

In this copyright infringement action the plaintiffs, author and illustrator, allege that the defendants unlawfully copied their work, "My Mother Is The Most Beautiful Woman In The World" by virtue of the defendants' television production and subsequent magazine publication of a "substantially similar" folk story. On this motion it is not necessary to fully set forth the facts of this case or to state the allegations of the parties, indeed, to do so would disserve the interests of judicial economy. All that is necessary to preclude summary judgment is the existence of a genuine

issue as to a material fact or facts. Such facts are here present and the instant motion is denied.

■■ A defendant's motion for summary judgment in a copyright infringement case should be granted only in the rarest instances. *See,* Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946); S. Rothenberg, Legal Protection of Literature, Art and Music, § 188 at 203 (1960); M. Nimmer, Nimmer on Copyright, § 138 at 599–600 (1965). Arnstein v. Porter, *supra,* clearly the leading national authority on motions of the instant nature, is controlling here. The following excerpts from Judge Frank's opinion in *Arnstein,* in which Judge Learned Hand joined, interlineated to reflect the facts of the instant case, are dispositive on this motion. 154 F.2d at 468–470.

The principal question on this appeal is whether the lower court, under Rule 56, properly deprived plaintiff of a trial of his copyright infringment action. The answer depends on whether "there is the slightest doubt as to the facts." [Citations omitted] In applying that standard here, it is important to avoid confusing two separate elements essential to a plaintiff's case in such a suit: (a) that defendant copied from plaintiff's copyrighted work and (b) that the copying (assuming it to be proved) went so far as to constitute improper appropriation.

As to the first—copying—the evidence may consist (a) of defendant's admission that he copied or (b) of circumstantial evidence—usually evidence of access—from which the trier of the facts may reasonably infer copying. Of course, if there are no similarities, no amount of evidence of access will suffice to prove copying. If there is evidence of access and similarities exist, then the trier of the facts must determine whether the similarities are sufficient to prove copying. On this issue, analysis ("dissection") is relevant, and the testimony of experts may be received to aid the trier of the facts. If evidence of access is absent, the similarities must be so striking as to preclude the possibility that plaintiff and defendant independently arrived at the same result.

If copying is established, then only does there arise the second issue, that of illicit copying (unlawful appropriation). On that issue (as noted more in detail below) the test is the response of the ordinary lay hearer; accordingly, on that issue, "dissection" and expert testimony are irrelevant.

In some cases, the similarities between the plaintiff's and defendant's work are so extensive and striking as without more, both to justify an inference of copying and to prove improper appropriation. But such double-purpose evidence is not required; that is, if copying is otherwise shown, proof of improper appropriation need not consist of similarities which, standing alone, would support an inference of copying.

Each of these two issues—copying and improper appropriation—is an issue of fact.

. . . . . .

We turn first to the issue of copying. After listening to the compositions as played in the phonograph recordings submitted by defendant, [after reading plaintiffs' book and defendants' television script and magazine stories] we find similarities; but we hold that unquestionably, standing alone, they do not compel the conclusion, or permit the inference, that defendant copied. The similarities, however, are sufficient so that, if there is enough evidence of access to permit the case to go to the jury, the jury may properly infer that the similarities did not result from coincidence.

Summary judgment was [is] then, proper if indubitably defendant did not have access to plaintiff's compositions. Plainly that presents an issue of fact. . . .

. . . [E]ven if we were to disregard the improbable aspects of plaintiff's story, [no tale of thugs or stooges is told herein] there remain parts by no means "fantastic." On the record now before us, more than a million copies of one of his compositions were sold; copies of others were sold in smaller quantities or distributed to radio stations or band leaders or publishers, or the pieces were publicly performed. [Plaintiff's book was first published 28 years ago. It enjoys a worldwide distribution. It has been reprinted in whole or in part in various anthologies and collections, and has been the subject of educational films and television and radio programs. For a four year period the plaintiff author conducted a weekly radio program on which she was introduced as the author of this book. The book here involved has also received mention in several nationally syndicated newspaper columns.] [1] If, after hearing both parties testify, the jury disbelieves defendant's denials [here, as in Arnstein, defendants' author, Jon Stone, completely denies any access to plaintiffs' book], [2] it can, from such facts, reasonably infer access. It follows that, as credibility is unavoidably involved, a genuine issue of material fact presents itself. With credibility a vital factor, plaintiff is entitled to a trial where the jury can observe the witnesses while testifying. Plaintiff must not be deprived of the invaluable privilege of cross-examining the defendant—the "crucial test of credibility"—in the presence of the jury.[3] Plaintiff, or a lawyer on his behalf, on such examination may elicit damaging admissions from defendant; more important, plaintiff may persuade the jury, observing defendant's manner when testifying, that defendant is unworthy of belief.

To be sure, plaintiff examined defendant on deposition. But the right to use depositions for discovery, or for limited purposes at a trial, of course does not mean that they are to supplant the right to call and examine the adverse party, if he is available, before the jury. For the demeanor of witnesses is recognized as a highly useful, even if not an infallible, method of ascertaining the truth and accuracy of their narratives. As we have said, "a deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand" for it deprives "of the advantage of having the witness before the jury." It has been said that as "the appearance and manner of the witness" is often "a complete antidote" to what he testifies, "we cannot very well overestimate the importance of having the witness examined and cross-examined in presence of the court and jury." . . .

"The right of a party, therefore, to have a witness subjected to the personal view of the jury, is a valuable right, of which he should not be deprived . . . except by necessity. And that necessity ceases whenever the witness is within the power of the court, and may be produced upon the trial."

With all that in mind, we cannot now say—as we think we must say to sustain a summary judgment—that at the close of a trial the judge could properly direct a verdict. [footnotes omitted]

No more need be said. *See also,* Higgins v. Baker, 309 F.Supp. 635, 637–638 (S.D.N.Y.1970); Nordstrom v. Radio Corporation of America, 251 F.Supp. 41 (D.Colo., 1965); Harris v. Fawcett Pub., Inc., 176 F.Supp. 390, 394 (S.D.N.Y.1959); MacDonald v. DuMaurier, 75 F.Supp. 653, 654 (S.D.N.Y.1946); 6 J. Moore, Federal Practice, ¶ 56.17 [14], at pp. 2515–2519 (1972); Nimmer, *supra,* § 138.

---

1. Reyher Affidavit, pp. 4–7.

2. Stone Deposition.

3. Judge Frank's footnote 8. "He would be so entitled if the trial were before a judge without a jury." 154 F.2d at 470.

414

The defendants' brief on the motion contains a series of interesting arguments on the merits of this case; these arguments must properly await another day. After a full plenary trial the court will resolve the merits of the instant action according to the facts proved and the applicable law, and it is then that the arguments herein advanced by the defendants should be made.

The papers submitted on the instant motion evidence the completion of substantial pre-trial discovery and, therefore, the court directs that the instant action be placed on the court's Ready Calendar fifteen (15) days from the date of this memorandum.

Defendants' motion for summary judgment, pursuant to Fed.R.Civ.P. 56 (b) is denied.

So ordered.